UNITED STATES DISTRICT COURT

DISTRICT OF MAINE


| ALLIANCE SHIPPERS, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 10-198-P-H |
| | ) | |
| FREDERICK D. STARRETT, III, JAY Y. McCRUM and GORDON R. POW, | ) ) ) | |
| | ) | |
| Defendants | ) | |


## DECISION AND ORDER ON MOTION TO DISMISS

This lawsuit grows out of the failure of a Maine potato business, Penobscot Frozen Foods, Inc. Its secured creditor, a bank, sold Penobscot Frozen Foods' business assets, including accounts receivable, to Penobscot McCrum, LLC, a Maine limited liability company, at public foreclosure auctions. Some of those accounts receivable were payment obligations of consignees who received interstate shipments of processed potatoes from Penobscot Frozen Foods. Penobscot Frozen Foods had agreed to pay the transportation company that delivered the potato products, Alliance Shippers, Inc., the plaintiff in this case, according to shipping invoices to be submitted after Alliance completed the delivery and provided documentation. By the time Alliance did so, Penobscot Frozen Foods was gone, and its "successor," Penobscot McCrum, refused to pay Alliance the unpaid shipping charges.

Alliance recovered some of these amounts from Penobscot McCrum in a lawsuit in New Jersey.[1] Now in this federal lawsuit in Maine seeking the remaining amounts it was not paid, Alliance has sued the President, Treasurer and majority shareholder (Frederick Starrett) of the defunct Penobscot Frozen Foods in two counts of fraud and conversion. It has also sued a managing member (Jay McCrum) of the new LLC Penobscot McCrum as well as a consultant (Gordon Pow) involved in the asset transfer, asserting a separate count of conversion against them. McCrum and Pow have moved to dismiss the conversion count against them. Their motion is **GRANTED** for lack of subject matter jurisdiction.

## FEDERAL QUESTION JURISDICTION

Alliance asserts jurisdiction under 28 U.S.C. §§ 1331 and 1337(a). Section 1331 is general federal question jurisdiction. Section 1337 grants federal jurisdiction "of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337(a). It then goes on to state that if the claim is under 49 U.S.C. § 11706 or § 14706, each receipt or bill of lading must exceed $10,000. Id. At oral argument, Alliance confirmed that it is not

---

[1] According to Alliance, the New Jersey court concluded that Maine law of successor liability applied and that Penobscot McCrum had no successor liability to Alliance. At summary judgment, that court ruled that Penobscot McCrum had liability to Alliance in quantum meruit (freight charges incurred after the asset acquisition) as well as in unjust enrichment (freight charges that Penobscot Frozen Foods passed through to its customers before asset acquisition that then were paid to Penobcot McCrum), but the trial court ruled that damages would have to be tried. At trial, the New Jersey court awarded $43,966.65 to Alliance against Penobscot McCrum in quantum meruit, but nothing in unjust enrichment, ruling that Alliance failed to meet its burden of proof on the unjust enrichment damages. Amended Opp. to Mot. To Dismiss Third Count of Compl. at 2-3 (Docket Item 21).

asserting any claim to recover under any provision of Title 49. Instead, it is asserting claims under Maine law, but claiming federal jurisdiction because its activities are in interstate commerce.

In 1983, the Supreme Court held that there is federal question jurisdiction over lawsuits to collect unpaid freight charges pursuant to tariffs required to be filed with the Interstate Commerce Commission. <u>Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.</u>, 460 U.S. 533 (1983). Alliance's claims here are not based upon a filed tariff. Instead, it argues that any suit involving freight in interstate commerce provides federal jurisdiction. I disagree. <u>Thurston</u> itself does not apply because there is no filed tariff. Moreover, following <u>Thurston</u>, Congress deregulated the transportation industry significantly in 1995 in the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. ch. 137. The ICCTA relieved road carriers like Alliance from having to file tariffs describing their rates in detail (with limited exceptions not pertinent here). As Alliance's counsel told me at oral argument, his legal theories for recovery are based upon state law. Even if 49 U.S.C. § 14101(b)(2) could be read as a grant of federal jurisdiction (it says that the exclusive remedy for a breach of contract under that subsection between a shipper and a carrier is "an action in an appropriate state court or United States district court …," hardly a clear grant of federal jurisdiction), that provision does not apply here, because it deals with a breach of contract lawsuit (which this is not) between a carrier (Alliance) and shipper (these defendants are not the shipper).

As a result, I see no basis for federal question jurisdiction under section 1331 or section 1337(a). This conclusion is consistent with District Judge Linares's decision in <u>Alliance Shippers, Inc. v. Penobscot Frozen Foods, Inc.</u>, Civil No. 04-3557 (D. N.J.)(remanding for lack of federal jurisdiction Alliance's lawsuit against Penobscot McCrum in the District of New Jersey, Transcript of Proceedings held on December 22, 2005, filed as Docket Item 14-4 in this case), and <u>Central Transport International v. Sterling Seating, Inc.</u>, 356 F. Supp. 2d 786, 790 (E.D. Mich. 2005)("actions seeking amounts due under filed tariffs present a federal question[], while actions seeking amounts due under a tariff that is not filed, do not").[2]

I reject Alliance's argument that there is federal question jurisdiction based upon judicial estoppel. Assuming that estoppel could ever be used to create federal jurisdiction, I find no basis for it here. As the First Circuit said recently, one essential requirement for judicial estoppel is that "the party must have succeeded in persuading a court to accept the earlier position." <u>Michael Perry and Conominium Housing, Inc. v. Blum</u>, No. 09-1977, 2010 WL 3815776, at *5 (1st Cir. Oct. 1, 2010). Here, it is true that Penobscot McCrum removed the New Jersey case to federal court. But even assuming that removal could be attributed to these new individual defendants (Alliance points out that

---

[2] I do not find helpful the cases that Alliance cites that apply a federal statute of limitations, section 14705, to collection suits brought by carriers subject to the Secretary of Transportation or Surface Transportation Board's jurisdiction under section 13501. Holding, as they do, that a federal statute of limitations preempts a state statute of limitations, <u>Arctic Express, Inc. v. Del Monte Fresh Produce NA, Inc.</u>, 366 B.R. 786 (S.D. Ohio 2007); <u>CGH Transport, Inc. v. QuebecCor World, Inc.</u>, 261 Fed. Appx. 817, 821 (6th Cir. 2008), does not necessarily lead to the conclusion that section 14705 creates federal jurisdiction in the first place, and certainly not on these facts involving a lawsuit for conversion against individuals who were not the shippers and not involved in the original relationship between shipper and carrier.

4

they are represented by the same lawyer), the federal removal ultimately was unsuccessful because the federal court remanded the case sua sponte to the state court. Because Penobscot McCrum's assertion of federal jurisdiction failed in New Jersey, the judicial estoppel argument lacks an essential component.

## DIVERSITY OF CITIZENSHIP JURISDICTION

It is undisputed that McCrum and Pow, on the one hand, and Alliance, on the other hand, are citizens of different states. The only issue is whether section 1332's $75,000 amount in controversy is satisfied.

I conclude that Alliance cannot use punitive damages in its amount in controversy calculation. Although Alliance requests punitive damages, it has not pleaded the essential element for punitive damage recovery under Maine law, namely express or implied malice. Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985). Without a plausible claim for punitive damages, I do not consider that component. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1954 (2009) (conclusory statements and labels must be disregarded and the remaining factual allegations in the complaint alone must establish an entitlement to relief); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (factual allegations must be sufficient "to raise a right to relief above the speculative level").

I also conclude that Alliance cannot add its damage claims against Starrett in Counts One and Two to meet the jurisdictional threshold for its claim against McCrum and Pow. Aggregation of claims against different

5

defendants to satisfy the jurisdictional amount is permitted only if the liability is joint, not if it is only several. See San Juan Fruit Co. v. Carrillo, 7 F.2d 106, 108 (1st Cir. 1925); E.R. Squibb & Sons, Inc. v. Accident & Casualty Ins. Co., 160 F.3d 925, 933 (2d Cir. 1998)("Aggregation to achieve diversity jurisdiction is barred when the liability of the defendants is several and not joint."); see also 15 James Wm. Moore et al., Moore's Federal Practice § 102.108. The claims against Starrett are for fraud *preceding* the asset sale and conversion of payments that consignees made to *Penobscot Frozen Foods*. There is no fraud claim at all against McCrum and Pow, and the conversion claim against them is for payments that consignees made to *Penobscot McCrum*, not to Penobscot Frozen Foods. Thus, these claims arise out of entirely different conduct and if there is liability, it is several, not joint.

The question then is whether the conversion claim against McCrum and Pow alone meets the $75,000 threshold. Relying upon an affidavit of Alliance's Director of Office Logistics filed in the New Jersey lawsuit, they calculate that after the payment of the New Jersey judgment, only $73,129.50 remains as a the maximum potential damage recovery against them. Alliance does not challenge consideration of that affidavit, nor those calculations,[3] but relies instead upon the punitive damage enhancement and Starrett's obligations, Amended Opp. to Mot. To Dismiss Third Count of Compl. at 11, which I have

---

[3] Indeed, the number finds support in the decision of the New Jersey Superior Court, Appellate Division, in Alliance Shippers, Inc. v. Penobscot Frozen Foods, Inc., Docket No. A-4441-06T5, 2009 WL 529241 (N.J. Super. March 4, 2009), Ex. 1 attached to Amended Opp. to Mot. to Dismiss (approximately $73,000 in remaining unpaid transportation charges after voluntary payment by Penobscot McCrum and amount awarded in New Jersey) (Docket Item 21-1).

rejected. Alliance's lawyer said at oral argument that based upon his law practice, it is his "suspicion" that Penobscot Frozen Foods billed the consignees for more than the stated price of goods plus Alliance's invoiced transportation charges, so that the total would exceed $75,000. But in the face of the defendants' showing on this Rule 12(b)(1) motion, his suspicion is not sufficient.[4] Instead, it became Alliance's burden to show that it does not appear to a legal certainty that its claim fails the threshold. Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004) ("If the opposing party questions the damages allegation, then 'the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount,'" (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938) (internal quotations omitted))). Alliance has failed to meet that standard of particularity. I find that the amount in controversy does not exceed $75,000, exclusive of interest and costs, and that diversity of citizenship jurisdiction therefore is lacking.

## SUPPLEMENTAL JURISDICTION

Assuming that there is jurisdiction over Counts 1 and 2 against Starrett (he has recently filed an Answer that contains an affirmative defense challenging subject matter jurisdiction), I decline to exercise supplemental

---

[4] Because of the materials submitted in connection with the motion, it might be necessary to treat the 12(b)(6) motion as a motion for summary judgment under Rule 12(c), although no one asked to submit more factual information. In any event, I do not decide the 12(b)(6) motion. For a Rule 12(b)(1) motion on the other hand, consideration of evidence outside the pleadings does not convert it into a motion for summary judgment unless the "jurisdictional issues cannot be separated from the merits of the case." Gonzalez v. United States, 284 F.3d 281, 287 (1st Cir. 2002). Here the jurisdictional facts are not intertwined with the merits.

jurisdiction over the claim against McCrum and Pow under my § 1367(c) discretionary power to do so.[5] Alliance's conversion claim for individual liability against a "managing member" and a "consultant" arising out of Penobscot McCrum's failure to pay Alliance transportation invoices after purchasing the Penobscot Frozen Foods accounts receivable from a secured creditor is a novel claim under Maine law of conversion.[6] Novelty is a ground for declining jurisdiction under section 1367(c)(1). Moreover, although Alliance is seeking recovery against all three defendants for the same loss (lack of payment), the basis for recovery in Count 3 is entirely different, depending upon conduct by these individual defendants after the asset transfer, whereas the claim against Starrett is for earlier conduct independent of them. See 28 U.S.C. § 1367(c)(4)("other compelling reasons for declining jurisdiction").

## FAILURE TO STATE A CLAIM

Because I find a lack of subject matter jurisdiction, I do not rule on the defendants' argument that I should dismiss Count 3 for failure to state a claim

---

[5] Although the defendants did not argue the point, supplemental jurisdiction may not be available even as a matter of discretion. If the only federal jurisdiction over Starrett is diversity of citizenship and if these two defendants are added into the claim against him under Rule 20(a)(2), then section 1367(b) appears to preclude supplemental jurisdiction (no supplemental jurisdiction "when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332"). See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 560 (2005)("§ 1367(b) explicitly excludes supplemental jurisdiction over claims against defendants joined under Rule 20").

[6] The alleged conversion occurred when these two defendants "instructed" Penobscot McCrum not to pay the Alliance invoices after it collected accounts receivable that it had purchased at public auction. Construing these individuals' action as converting an Alliance property interest (an element of conversion, according to Withers v. Hackett, 714 A.2d 798, 800 (Me. 1998)) is novel. See Innovative Network Solutions, Inc. v. Onestar Communications, LLC, 283 F. Supp. 2d 295, 301 (D. Me. 2003)(quoting Hazelton v. Locke, 104 Me. 164, 71 A. 661, 663 (1908)("The Maine Law Court has refused to recognize a cause of action in conversion for insurance premiums paid to an agent pursuant to contract, noting that '[m]ere failure to deliver such property in specie on demand would not be technical conversion, nor would the refusal to pay over its equivalent be conclusive evidence of conversion in the sense of the law of trover, but it might be the ground for an action of assumpsit.'").

under Fed. R. Civ. P. 12(b)(6) or as a result of collateral estoppel.

**CONCLUSION**

Count 3 is **DISMISSED** for lack of subject matter jurisdiction.

**SO ORDERED.**

**DATED THIS 7TH DAY OF OCTOBER, 2010**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**